UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ELMER E. WALCKER and
STELLA C. WALCKER, husband
and wife,

      Plaintiffs,

      v.

SN COMMERCIAL, LLC, an
Alaska limited liability company;
SN SERVICING CORPORATION,
an Alaska limited liability company;
CHRISTINA BANK & TRUST
COMPANY, a Delaware
corporation; SECURITY
NATIONAL ASSET
SECURITIZATION SERIES
TRUST II, a Delaware corporation;
and JOHN and JANE DOES 1-10,
inclusive,

      Defendants.

NO.  CV-06-009-RHW

**ORDER GRANTING
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT;
DENYING PLAINTIFFS'
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Before the Court are Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Ct. Rec. 33); and Plaintiff's Motion for Partial Summary Judgment (Ct. Rec. 48).  A hearing was held on the motions on September 22, 2006.  Plaintiff was represented by Timothy Carlson; Defendants were represented by Athan Tramountanas.  Defendants' counsel Michael H. Pinkerton and Kim Osenbaugh participated telephonically.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 1**

1

**BACKGROUND**

2      Plaintiffs Elmer and Stella Walcker operate hotel property located in Chelan,

3  Washington, formerly known as the Caravel Resort.  In 1988, Plaintiffs and

4  KeyBank[1] entered into a loan obligation agreement to finance the Caravel Resort.

5  Sometime in early November, 2003, Defendants SN Servicing Corporation

6  ("SNS") and SN Commerical, LLC ("SNC") purchased the loan from Key Bank.

7      On November 12, 2003, Key Bank sent Plaintiffs a letter stating that it had

8  assigned its interest in the loan documents to Defendants.  On November 28, 2003,

9  Defendant SNS sent a "Notice of Assignment, Sale, or Transfer of Servicing

10  Rights" to Plaintiffs.  The letter contained the following language:

11      RE:    Previous loan number 313394
               Loan number 0000164636

12

13      Dear Customer:

14          You are hereby notified that the servicing of your above-
        referenced loan, that is, the right to collect payments from you, has
        been assigned, sold or transferred from KeyBank National Association
15      to SN Servicing Corporation, a debt collector, effective November 12,
        2003.

16          The assignment, sale, or transfer of the servicing of the
        mortgage loan does not affect any term or condition of the mortgage
17      instruments, other than terms directly related to the servicing of your
        loan.

18          The business address (correspondence only) for your new
        servicer is SN Servicing Corporation, 51 VERONICA AVE.,

19      SOMERSET, NJ 08873.  The business address (for payments) for
        your new service is Bank One, N.A. 10-07038, P.O. BOX 730742,

20      DALLAS, TX 75373-0742.  Your payment should be made payable to
        SN COMMERICAL LLC.

21          Should you have any questions regarding this transfer, you may
        call SN Servicing Corporation toll free at (800) 941-4670, Monday

22      through Friday 8:00 a.m. to 5:00 p.m. EST.
        SN Servicing Corporation looks forward to the opportunity to work

23      with you in servicing your loan.

24  (Ct. Rec. 84, Ex. 1).

25  _____

26      [1]Key Bank National Association was named as a Defendant in Plaintiffs'

27  lawsuit.  On March 30, 2006, the Court granted Key Bank's Motion to Dismiss (Ct.

28  Rec. 76).

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 2**

On December 4, 2003, Defendant SNS sent another letter to Plaintiffs that contained the following language:

Dear Borrower(s):

Please be advised that your commercial loan account has been transferred to SN Servicing Corporation, and as your Asset Manager, I would like to take this opportunity to welcome you to SN Servicing Corporation and offer you a few options for getting a fresh new start with your outstanding payments. We understand from time to time everyone experiences financial problems and we want to offer you the opportunity today to resolve the problem.
I urge you to contact me today to discuss the following options for reinstating your loan to a current status. Keep in mind that these programs are subject to change or cancellation at any time without notice to you and any workout proposal is subject to final management approval.
1. New Beginnings Program . . .
2. Loan Modification program .. .
3. Other Workout Options . . .

(Ct. Rec. 3-2 Ex. 8).

At the bottom of the letter the following language was set forth:

TO THE EXTENT THE FAIR DEBT COLLECTIONS PRACTICES ACT MAY BE DEEMED TO APPLY, YOU ARE HEREBY NOTIFIED THAT SN SERVICING CORPORATION, ITS EMPLOYEES, AGENTS AND ATTORNEYS ARE ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Id.*

On May 12, 2004, Defendant SNC sent a Notice of Default to Plaintiffs that set forth the amount Plaintiffs needed to pay in order to cure the default (Ct.Rec. 302, Ex. 10).

The basis of Plaintiffs' claims against Defendant SNS and SNC is that they violated the Washington Collection Agency Act ("WCAA"), Wash. Rev. Code § 19.16. *et seq.*, when they sent Plaintiffs the above-referenced letters. Plaintiffs assert that the content of the two letters sent out by Defendant SNS violated the WCAA by failing to set forth the "amount owing on the original obligation at the time it was received by SNS for collection or by assignment," in violation of § 19.16.250(8)(c)(i). The claim against Defendant SNC is based on the allegation

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3**

1   that at the time SNC sent Plaintiffs' the Notice of Default letter, it was not the

2   owner of the loan because it had transferred its interest in the loan to Wells Fargo

3   Foothills; at the time it mailed the default letter, then, it was acting as an unlicensed

4   out-of-state collection agency in violation of WCAA.  Plaintiffs are not alleging

5   that the content of the default letter violated the WCAA.  Plaintiffs' claims against

6   the remaining entities are that these entities have been the loan servicer, trustee, or

7   collection agent regarding the loan documents in question, have held an interest in

8   the loan documents, or have been named on the Notices delivered to Plaintiffs.

9   Plaintiff is seeking recovery of all interest and costs paid in excess of the principal

10  from these Defendants, based on unjust enrichment.

DISCUSSION

12      Defendants move to have the claims asserted against them dismissed, or in

13  the alternative, move for summary judgment.  Plaintiff also filed a motion for

14  partial summary judgment.

15  **I.    Standard of Review**

16      When ruling on a Rule 12(b)(6) motion to dismiss, if a district court

17  considers evidence outside the pleadings, it must normally convert the 12(b)(6)

18  motion into a Rule 56 motion for summary judgment, and it must give the non-

19  moving party an opportunity to respond.  *United States v. Ritchie*, 342 F.3d 903,

20  908 (9th Cir. 2003).  Here, the Court reviewed documents outside the pleadings

21  with regard to Defendants' motion; therefore, the Court will consider Defendants'

22  motion as a motion for summary judgment.

23      Summary judgment is appropriate if the "pleadings, depositions, answers to

24  interrogatories, and admissions on file, together with the affidavits, if any, show

25  that there is no genuine issue as to any material fact and that the moving party is

26  entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  There is no

27  genuine issue for trial unless there is sufficient evidence favoring the non-moving

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 4**

1   party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby,*

2   *Inc.,* 477 U.S. 242, 250 (1986). When considering a motion for summary

3   judgment, a court may neither weigh the evidence nor assess credibility; instead,

4   "the evidence of the non-movant is to be believed, and all justifiable inferences are

5   to be drawn in his favor." *Id.* at 255.

6   **II.   Washington Collection Agency Act**

7       The Washington Collection Agency Act prohibits "licensees" from engaging

8   in a litany of various practices. Wash. Rev. Code § 19.16.250. Specifically, the

9   WCAA prevents a licensee from giving or sending to any debtor "any notice,

10  letter, message, or form which represents or implies that a claim exists unless it

11  shall indicate in clear and legible type the name of the licensee, and the name of the

12  original creditor." § 19.16.2509(8). If the notice, letter, message, or form is the

13  first notice to the debtor, an itemization of the claim asserted must be made. §

14  19.16.250(8)(c).     A "claim" is defined as any obligation for the payment of

15  money or thing of value arising out of any agreement or contract, express or

16  implied. § 19.16.100(5).

17      In their Complaint, Plaintiffs allege that Defendants are "out-of-state

18  collection agencies. In order to act as an "out-of-state collection agency," the

19  entity must first obtain a license from the state of Washington. § 19.16.110. If an

20  entity knowingly operates as an out-of-state collection agency without a license,

21  the penalty is a fine not exceeding $500 or imprisonment not exceeding one year,

22  or both. § 19.16.430. Additionally, the entity is prohibited from receiving any fee

23  or compensation, and such fees or compensation must be returned to the owner of

24  the accounts on which the moneys were paid. *Id.*

25      If a licensee violates the WCAA, "neither the licensee, the customer of the

26  licensee, nor any other person who may thereafter legally seek to collect on such

27  claim shall ever be allowed to recover any interest, service charge, attorneys' fees,

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 5**

1  collection costs, delinquency charge, or any other fees or charges otherwise legally

2  chargeable to the debtor." § 19.16.450.  The statute specifically provides that the

3  debtor still owes for the original amount of the claim or obligation.  *Id.*

4       The statute defines the terms "collection agency" and "out-of-state agency,"

5  and also defines what is <u>not</u> a "collection agency."  A collection agency is <u>not</u>

6  someone who acts as a debt collector of another person, where both are related by

7  common ownership or affiliated by corporate control, if (1) the person acting as a

8  debt collector does so only for persons to whom it is so related or affiliated, and (2)

9  the principal business of the person is not the collection of debts.

10 § 19.16.100(3)(f).

11      An "out-of-state collection agency" is defined as a person whose activities

12 within this state are limited to collecting debts from debtors located in this state by

13 means of interstate communications, from the person's location in another state on

14 behalf of clients located outside this state. § 19.16.100(4).  The statute specifically

15 excludes from the definition any person who is excluded from the definition of the

16 term "debt collector" under the federal Fair Debt Collection Practices Act, 15

17 U.S.C. § 1692(a)(6).[2]  *Id.*

18

19 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

20      [2]15 U.S.C. § 1692(a)(6) defines "debt collector" as any person who uses any

21 instrumentality of interstate commerce or the mails in any business the principal

22 purpose of which is the collection of any debts, or who regularly collects or

23 attempts to collect, directly or indirectly, debts owed or due or asserted to be owed

24 or due another.  Notwithstanding the exclusion provided by clause (F) of the last

25 sentence of this paragraph, the term includes any creditor who, in the process of

26 collecting his own debts, uses any name other than his own which would indicate

27 that a third person is collecting or attempting to collect such debts. . .The term does

28 not include–

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 6**

1  **III.    Defendant's Motion for Summary Judgment**

2          Defendants assert that they meet the exemption set forth in the WCAA;

3  therefore, the WCAA does not apply to them and Plaintiffs' claims must be

4  dismissed.

5          **A.    Defendant SNS**

6          Defendant SNS argues it meets the exemption set forth in § 19.16.100(4)

7  because the sending of the letters were performed on behalf of an affiliate and its

8  principal business is not the collection of debts; therefore, the WCAA does not

9  apply.

10         In response, Plaintiffs make two arguments.  First, because Defendant SNS

11  is licensed as an out-of-state collection agency with the state of Washington, it

12  must comply with the WCAA, regardless of whether the exemption applies.

13  Second, Defendant SNS collects debts for unrelated entities and its principal

14  business is the collection of debts, so the exemption does not apply.

15  _____

16         (B) any person while acting as a debt collector for another person, both of

17  whom are related by common ownership or affiliated by corporate control, if the

18  person acting as a debt collector does so only for persons to whom it is so related

19  or affiliated and if the principal business of such person is not the collection of

20  debts; . . .

21         (F) any person collecting or attempting to collect any debt owed or due or

22  asserted to be owed or due another to the extent such activity (i) is incidental to a

23  bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a

24  debt which was originated by such person; (iii) concerns a debt which was not in

25  default at the time it was obtained by such person; or (iv) concerns a debt obtained

26  by such person as a secured party in a commercial credit transaction involving the

27  creditor.

28  **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7**

**(1)    Whether a Licensee is Never Exempt from the WCAA**

Plaintiffs argue that because Defendant SNS is licensed in the state of Washington, it cannot be exempted from complying with the statute.  It is undisputed that SNS is licensed in the state of Washington as an out-of-state debt collector.  In making their argument, Plaintiffs rely on the statutory language of § 19.16.250, which states that "No licensee or employee of a licensee shall" undertake the listed prohibited practices.  § 19.16.100 defines "licensee" as "any person licensed under this chapter."

Common sense and the plain meaning of the statute do not support Plaintiff's position.  Section 19.16.110 states that "no person shall act, assume to act, or advertise as a collection agency or out-of-state agency *as defined in this chapter* . . . without first having applied for and obtained a license from the director." (Emphasis added).   Under the plain meaning of the statute a person would need to meet the definition of a collection agency or an out-of-state collection agency before § 19.16.250 would apply, and before a license would be required.

 As Defendant points out, if "licensee" means any one that holds a license, regardless of whether it qualifies as a collection agency or out-of-state collection agency, an entity that hires an unlicensed collection agency would not be subject to any penalties under § 19.16.250, even if the unlicensed collection agency violated every provision of § 19.16.250, because it did not hire a "licensee."  Consequently, if this were true, a creditor that hires an unlicensed debt collector would have every incentive to report the unlicensed collection agency because it would then be able to recover any fee paid to the collection agency under § 19.16.430.  Such a result would be at odds with the purpose of the statute.  *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003) ("If the clear language, when read in the context of the statute as a whole or of the commercial or other real-world (as

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8**

1  opposed to law-world or word-world) activity that the statute is regulating, points

2  to an unreasonable result, courts do not consider themselves bound by "plain

3  meaning" but have recourse to other interpretive tools in an effort to make sense of

4  the statute.).

5      Moreover, under Plaintiffs' reading of the statute, if a creditor holds a

6  license, then the WCAA applies to the creditor at all times, even when the creditor

7  is collecting on its own debt, notwithstanding that the WCAA clearly exempts

8  creditors who collect on their own debt.  The Court rejects Plaintiffs' interpretation

9  of the WCAA that a licensee must comply with § 19.10.250 regardless of whether

10  it qualifies for an exemption under the Act.

11              (**2**)    **Whether the WCAA applies to Defendant SNS**

12      An entity who acts as a debt collector of another person, where both are

13  related by common ownership or affiliated by corporate control, and (1) the person

14  acting as a debt collector does so only for persons to whom it is so related or

15  affiliated, and (2) the principal business of the person is not the collection of debts,

16  is exempt from the requirements of the WCAA.  § 19.16.100(3)(f).

17      Plaintiff argues that Defendant SNS does not meet this exemption because

18  Defendant SNS collects debt for persons or entities that it is not related or

19  affiliated, and its principal business is the collection of debts.

20              **a.    Related by Common Ownership or Affiliation by**
                       **Corporate Control**

21

22      Plaintiffs assert that Defendant SNS acts as a debt collector for other persons

23  who are not related by common ownership or affiliated by corporate control.  In

24  support of their argument, Plaintiffs rely on the fact that Security National, Inc., a

25  note holding entity for which Defendant SNS admits it may have serviced a loan,

26  has majority ownership vested in individuals who have no control or ownership

27  interest in SNS.  Specifically, Exhibit B to Ct. Rec. 127 provides a table listing

28  note holding entities for which SNS services loans.  The table also states the

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ~ 9**

ownership of each of these entities. *Id.* The table sets forth the following percentage of ownership for Security National, Inc.:

| | |
|---|---|
| 16.67% | Charles D. Aalfs |
| 16.67% | Rebecca Aalfs |
| 16.67% | Robert Kietz |
| 16.67% | Carolyn Dietz |
| 10.00% | Robin P. Arkley II |
| 10.00% | Cherie P. Arkley |
| 6.66% | CCT, LLC, Trustee for Allison Arkely Trust #1 |
| 6.66% | CCT, LLC, Trustee for Elizaberth Arkley Trust #1 |

At issue is the meaning of the phrase "common ownership" or "affiliated by corporate control" as used by 15 U.S.C. § 1692a(6)(B). Plaintiffs' argument suggests that "common ownership" requires complete identity of ownership interests. Under Plaintiffs' theory, the fact that Security National, Inc., is owned in part by persons who do not own SNS prevents SNS from qualifying for the exemption. Defendant SNS argues that "common ownership" is met if the entities are ultimately owned by members of the same family. Neither party has provided case law in support of their respective arguments. Nor has the Court uncovered any case law that interprets the specific phrase "related by common ownership."

Other courts who have applied this exemption under the Fair Debt Collections Practice Act have concluded that the common ownership or corporate affiliate exemption should be interpreted broadly. *Backuswalcott v. Common Ground Community HDFC*, 104 F. Supp. 2d 363, 367 (S.D. N.Y. 2000); *Kang v. Einstein*, 962 F.Supp. 112 (N.D. Ill. 1997); *Meads v. Citicorp Cred. Servs. Inc.*, 686 F.Supp. 330, 331 (S.D. Ga. 1988). In doing so, these courts relied on the purpose of the Act, which is to prevent abusive collection practices. The Act's target are independent debt collectors of "past-due" or "delinquent" debts, who,

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10**

1  unlike creditors, are not "restrained by the desire to protect their good will when

2  collecting past due accounts, " since "independent collectors are likely to have no

3  future contact with the consumer and often are unconcerned with the consumer's

4  opinion of them." *Meads*, (*quoting* S.Rep. No. 95-382, 95th Cong. 1st Sess.,

5  *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1896 & 1697) (citations

6  omitted). These cases support the application of the exemption in this case. Here,

7  the letters sent by Defendant SNS do not represent an attempt to collect on an

8  outstanding debt. On the contrary, the letters evidence an intent on the part of

9  Defendant SNS to serve the loan and establish a long-term relationship with

10 Plaintiffs. Indeed, as explained below, the letters were not written when the loan

11 was in default.

12      Also, a common sense reading of the phrase  "related by common

13 ownership" suggests that complete identity of ownership is not required for the

14 exemption to apply. For example, it is generally understood that if you are

15 "related" to someone, you and that person will share some similar, if not the same,

16 genetic coding. Being related, however, is not the same as being an identical twin.

17 Likewise, "related by common ownership" would mean not complete identity of

18 ownership, but some common thread of ownership that runs through the various

19 entities. Here, the Arkley family provides the common thread through which the

20 Court can conclude that SNS and Security National, Inc. are "related by common

21 ownership."

22      Moreover, in the absence of case law interpreting the "common ownership,"

23 the Court will look to other case law interpreting the phrase "common ownership"

24 for guidance. In *N.L.R.B v. Carson Cable T.V.*, 795 F.2d 879 (9th Cir. 1986), the

25 Circuit was reviewing the determination of the National Labor Relations Board

26 that three cable companies were a single employer within the meaning of section

27 2(2) of the National Labor Relations Act. *Id.* at 881. One of the criteria used by

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11**

the Board was "common ownership." *Id.* In that case, TCI owned 20 percent stock in company one and 80 percent stock of company two. *Id.* at 882. The remaining stock of these two companies were owed by unrelated individuals. *Id.* The third company was principally owned by Marvin Roseman. TCI and Roseman created a new corporation–CMC–to manage the three cable companies. *Id.* TCI owned 80 percent of CMC, and Roseman owned the other 20 percent. The Circuit held that while it was true that no one entity had a controlling interest in all four entities, and there was no complete identity of ownership interests, it was "apparent that a pattern of common ownership exists among the four businesses through the combined ownership interestes of TCI and Roseman." This case is instructive in that the requirement for common ownership under the National Labor Relations Board does not require complete identity of common ownership to find that entities should be treated as a single employer.

Plaintiffs have not disputed that the Arkley family has ownership interests in all of the Note-Holding companies listed in Exhibit B. This common thread of ownership meets that requirement of being "related by common ownership."

### b. Principal Business is the Collection of Debts.

Plaintiff argues that Defendant SNS principal business in the collection of debts, the fact that it claims it is a loan servicing company. Defendants argue that a loan servicing company provides services beyond the collecting of a debt. In his affidavit, William Fogleman, in-house counsel for SNS, states that SNS limits its debt collection practices to companies to which it is related through Security National Master Holding Company and that it does not accept business from creditors other than those companies. Defendant SNS admits that it engages in limited debt collection practices, but asserts that its principal business is the servicing of loans. Defendant SNS asserts that its services include maintaining escrow accounts, paying taxes, and making insurance premiums, as well as

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12**

processing payments on performing loans. *See Baily v. Security National Servicing Corp*, 154 F.3d 384 (7th Cir. 1998) (finding that "[s]ervicing a loan like the [plaintiffs'] means that the defendants were responsible for sending out monthly statements, collecting mortgage payments and notifying borrowers of accounts payable."); *see also Perry v. Stewart Title Co.*, 756 F.2d 1197(5th Cir. 1985) (holding that "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, *a mortgage servicing company*, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."[3] *Id.* at 1208 (*citing to* S.Rep. No. 95-382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Ad. News 1695, 1698) (emphasis added).  The Court agrees with the Seventh Circuit that servicing loans means that Defendants were responsible for sending out monthly statements, collecting mortgage payments, and notifying borrowers of accounts payable, and further agrees that Congress did not intend for mortgage servicing companies to be bound by the Fair Debt Collection Practices Act, if the debt was not in default at the time it was assigned.

Plaintiff asserts that the debt in question was in default when it was transferred to SNS.  The Court disagrees.  Because "default" is not defined in the FDCPA, courts have looked to the contracts underlying the debt, or other

---

[3]Specifically, the legislative history states that "the committee does not intend the definition to cover the activities of trust departments, escrow companies, or other bona fide fiduciaries; the collection of debts, such as mortgages and student loans, by persons who originated such loans; mortgage service companies and others who service outstanding  debts for others, so long as the debts were not in default when taken for servicing; and the collection of debts owed to a creditor when the collector is holding the receivable account as collateral for commercial credit extended to the creditor."

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13**

applicable statutes.  *See Gacy v. Gammage & Burnham*, 2002 WL 467937 (D.

Ariz. 2006)*, citing Hartman v. Meridian Fin. Serv., Inc.*, 191 F.Supp.2d 1031,

1044 (W.D.Wisc. 2002; *Skerry v. Massachusetts Higher Educ. Assistance Corp.*,

73 F.Supp.2d 47, 53-54 (D.Mass. 1999).[4]

In this case, the original loan document set forth the events of default.

Specifically, the Promissory Note states:

> 1   Events of Default.  The occurrence of any one or more of the following shall be an event of default under this Note:
>     (a)   Failure to make any payment when due under this Note, the Deed of Trust, any Loan Agreement, or any other document or instrument executed by Borrower in connection with this Note (collectively, the "Loan Documents") if not cured within ten (10) days after written notice thereof given by Lender to Borrow.

---

[4]*Skerry v. Massachusetts Higher Educ. Assistance Corp.*, 73 F. Supp. 2d 47,

140 Ed. Law Rep. 544 (D. Mass. 1999), held that a company servicing a federal

student loan was exempt from the definition of "debt collector" under the Fair Debt

Collection Practices Act (15 U.S.C.A. § 1692a(6)(F)(iii)) where the company had

acquired a loan for servicing after the borrower became "delinquent" in his

payments but befre the loan was declared in "default" under the applicable

regulations pertaining to the loan program. The court found that the provision of

the loan program regulation requiring a 180 day period to pass prior to defaulting a

student loan debt was a function of the consumer protections built into the loan

program; it provided time for necessary counseling and creation of alternate

payment plans for the debtor, with the ultimate goal of default aversion.

Accordingly, the court found that the definition of default that appears in the loan

program regulations should be applied for purposes of construing 15 U.S.C.A. §

1692a(6)(F)(iii) when the debt involved is a student loan debt.  Applying this

definition, the court found that the defendant fell within the § 1692a(6)(F)(iii)

exception as the plaintiff's loan was not 180-days past due when the company

ndertook activities t provide preclaims assistance.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14**

1    The Deed of Trust also has the same language.

2        Under the terms of the Loan Documents, Plaintiffs were not in default until

3    10 days after Defendants sent them the May 12, 2004, Notice of Default.

4    Consequently, at the time that SNS began servicing Plaintiffs' mortgage, the loan

5    was not in default.

6        There being no genuine question of material fact, the Court finds as a matter

7    of law that SNS is not an "out-of-state collection agency," as contemplated by the

8    Washington Collection Agency Act.  Accordingly, Defendant SNS' motion for

9    summary judgment is granted.

10        **(3)    Whether Defendant SNS Violated the WCAA**

11        Even if the Court were to find that the WCAA applied to Defendant SNS,

12    the two letters sent out by SNS do not violate the WCAA.  *See Bailey*, 154 F.3d at

13    388 ("Under the law only communications "in connection with the collection of

14    any debt" (see 15 U.S.C. §§ 1692e, 1692g) fall under the ambit of the Act, and the

15    defendants' letters cannot reasonably be placed in that category.  The important

16    letter dated January 4 does not "demand" any payment whatsoever, but merely

17    informs the Baileys about "the current status" of their account.  The due dates

18    listed in the letter are all prospective . . . A warning that something bad might

19    happen if payment is not kept current is not a dun, nor does it seek to collect any

20    debt, but rather the opposite because it tries to prevent the circumstance wherein

21    payments are missed and a real dun must be mailed. ").  Although *Bailey* was

22    interpreting the FDCPA, its reasoning can be applied to the WCAA as well[5].

23

24    _____

25        [5]The FDCPA defines "debt" as "any obligation or alleged obligation of a

26    consumer to pay money arising out of a transaction in which the money, property,

27    insurance, or services which are the subject of the transaction are primarily for

28    personal, family, or household purposes, whether or not such obligation has been

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT** ~ 15

1    Under the WCAA, any first "notice, letter, message, or form which

2 represents or implies that a claim exists" must contain the amount owing on the

3 original obligation at the time it was received by the licensee for collection or by

4 assignment. Wash. Rev. Code § 19.16.250(8).[6] A "claim" is defined as any

5 obligation for the payment of money or thing of value arising out of any agreement

6 or contract, express or implied. § 19.16.100(5).

7    Here, the Court finds that the two letters sent by SNS did not represent or

8 imply that a claim existed. The letters did not make a demand for payment.

9 Instead, they were informational letters regarding the current status of their

10 account. As such, the requirements of section 19.16.250(8) do not apply to these

11 letters.

12    **(4)    Conclusion**

13    Summary judgment in favor of Defendant SNS is appropriate because SNS

14 is not an out-of-state debt collector, and the Washington Collection Agency Act

15 does not apply to it. Alternatively, the Court finds that the two letters that were

16 sent to Plaintiffs by Defendant SNS do not violate the Washington Collection

17 Agency Act. Because Plaintiff's Washington Consumer Protection Act claim

18 relied exclusively on the alleged violations of the Collection Agency Act, summary

19 judgment with regard to this claim is appropriate as well.

20    **B.    Defendant SNC**

21    Plaintiff argues that Defendant SNC acted as an unlicensed collection

22 agency for Wells Fargo Foothill. Plaintiff is not alleging that the letter sent by

23 SNC violated the requirements of Wash. Rev. Code § 19.16.250.

24    In response to this argument, Defendant filed affidavits and loan documents

25 _____

26 reduced to judgment." 15 U.S.C. § 1692a(5).

27    [6]It is undisputed that the letters sent out by Defendant SNS did not contain

28 the amount owing on the original obligation.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT ~ 16**

1  that indicate that SNC routinely borrows money from Wells Fargo Foothill,

2  pursuant to a Loan and Security Agreement (LSA).  Under the LSA, Defendant

3  SNC can borrow against certain mortgage loans it originates or acquires.  The

4  money borrowed under the LSA is secured by SNC's assets, which include the

5  actual mortgage loans.  Defendant SNC asserts that it assigns the loans to Wells

6  Fargo Foothill for security purposes only and that at no time does Wells Fargo

7  Foothill have a beneficial interest in the loans used as collateral. The loan

8  documents are not held by Wells Fargo Foothill, but by a third party custodial

9  agent.  Wells Fargo Foothill records an assignment of the deeds of trust that are

10 provided as collateral, but reassigns the deeds of trust when SNC repays the money

11 it borrowed according to the LSA.  Plaintiff's characterization that the Wells Fargo

12 Foothill assignment was an unconditional assignment is contradicted by the loan

13 documents.  Moreover, the default letter did not purport to collect a debt on behalf

14 of Wells Fargo Foothill.

15      The Court finds that Defendant SNC did not act as an unlicensed collection

16 agency when it caused the May 12, 2004, letter to be sent.  Summary judgment in

17 favor of Defendant SNC is appropriate.  Accordingly, Plaintiffs' claims under the

18 Washington Consumer Protection Act that rely on the fact that Defendant SNC

19 violated the WCAA fail as well.

20      **C.    Remaining Defendants**

21      Plaintiffs asserted a claim of unjust enrichment against Defendant Christiana

22 and SN Trust.  Plaintiffs base this claim on the Washington Collection Agency

23 Act's damages provision, alleging that if the WCAA was violated, no party or

24 holder of the Loan Documents was entitled to collect more than the original

25 principal amount of the Note.  Because the Court finds that Defendants SNS and

26 SNC did not violate the Washington Collection Agency Act, or the Washington

27 Consumer Protection Act, Plaintiffs' claim for unjust enrichment based on these

28

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL**
**SUMMARY JUDGMENT ~ 17**

violations fail.

Accordingly, **IT IS HEREBY ORDERED:**

1.    Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment (Ct. Rec. 33) is **GRANTED**.

2.    Plaintiffs' Motion for Partial Summary Judgment (Ct. Rec. 48) is **DENIED**.

3.    The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this 2nd day of November, 2006.

*s/ Robert H. Whaley*

ROBERT H. WHALEY
Chief United States District Judge

Q:\CIVIL\2006\Walcker\sj.ord.wpd

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 18**